IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAMELA CARTER-BUTLER,<br><br>                    *Plaintiff*,<br><br>     v.<br><br>TARGET STORE #2596, et al.,<br><br>                    *Defendants*. | CIVIL ACTION<br>NO. 15-04030 |

**Pappert, J.**                                                                                                        February 19, 2016

<u>**MEMORANDUM**</u>

       Plaintiff Pamela Carter-Butler ("Carter-Butler") sued Defendant Target Corporation[1] ("Target") after falling and injuring her knee while shopping in one of its stores. Target filed a motion for summary judgment which the Court grants for the reasons that follow.

**I.**

       On August 23, 2014, Carter-Butler was shopping at the Target store located at 160 West Dekalb Pike, King of Prussia, Pennsylvania. (Pl.'s Stat. of Mat. Facts ("Pl.'s SMF") ¶ 1; Def.'s Stat. of Mat. Facts ("Def.'s SMF") ¶ 1.) She was shopping in the Girls' Section of the store, which consisted of a number of clothing racks and displays, separated by aisles running vertically and horizontally. (Pl.'s SMF ¶¶ 2, 4; Def.'s SMF ¶¶ 2, 4.) Carter-Butler fell over one of the clothing racks. (Pl.'s SMF ¶ 1; Def.'s SMF ¶ 1; Compl. ¶¶ 12–16.) The rack had vertical bars with arms to hold the clothing, and four horizontal feet, each with a wheel attached to the end. (Doyle Dep. 37:1–21.) Two days after the accident, Carter-Butler filed an incident report in which she represented that her "foot went under the rack" and she fell. (Pl.'s SMF ¶ 2; Def.'s SMF ¶ 2.)

---

[1]     Carter-Butler's complaint also incorrectly names as defendants Target Store #2596 and Target Stores, Inc. The only properly named defendant in the case is Target Corporation.

1

During her deposition, Carter-Butler testified that she fell after her shopping cart hit the rack, causing the rack to come apart and trip her. (Carter-Butler Dep. 39:12–40:4.) She also stated that as she fell, her cart "flew out" and the rack "went another direction." (*Id*.) The entire incident was captured on the store's surveillance video. (Store Video, Bates No. CARTER-BUTLER0006 ("Store Video"), ECF No. 21.) The surveillance video contradicts Carter-Butler's deposition testimony. For example, the video shows that her cart never strikes the rack, and thus could not have caused it to "come apart."[2] (*Id*.) In fact, at the time of her fall, she is not using the cart or moving it in any way. (*Id*.) Carter-Butler also testified that she was down on the ground for ten minutes. (Carter-Butler Dep. 41:13–16.) In fact, she was down on the ground for less than thirty seconds. (Store Video.) While disappointing, Carter-Butler's untruthful deposition testimony is not, as a matter of law, completely dispositive of this case.

Carter-Butler's testimony that she did not observe any debris or clutter on the floor where she tripped is of greater relevance. (Carter-Butler Dep. 38:6–8.) She also stated that the area was well-lit and that nothing about the displays in the store caused her concern. (*Id*. 37:21–38:5.) Similarly, Alexandra Doyle ("Doyle"), the store's Executive Team Leader of Soft Lines,[3] testified that during the month of August 2014, all of the clothing racks were "properly set in place." (Doyle Dep. 28:5–10.) She also stated that each morning, a team member at the store is designated to make sure the clothing racks are properly aligned before the store opens and that those employees are trained to keep an active lookout and correct any racks that may be hazardous or out of alignment. (*Id*. 29:9–30:2; 30:13–31:3.)

Doyle reviewed the surveillance video and testified that there were no issues with the clothing rack setup, the spacing of the racks or the location of the racks at the time of the

---

[2] There is no evidence in the record that the rack became disassembled or otherwise come apart at all.
[3] The "Soft Lines" department consists of the various clothing sections in a Target store. (Doyle Dep. 22–24; Oral Arg. 9:4–7.)

accident.  (*Id*. 49:13–18.)  Gabrielle Hamblin ("Hamblin"), the team member who responded to the scene after Carter-Butler fell, testified that she did not notice anything unusual about the rack setup.  (Hamblin Dep. 21:13–19.)  Hamblin also testified that she did not see any debris or fluids on the ground near the rack.  (*Id*.)

Carter-Butler filed her complaint on July 21, 2015.  (ECF No. 1.)  Target filed its motion for summary judgment on January 14, 2016 (ECF No. 13.), Carter-Butler filed her response on January 27, 2016 (ECF No. 14) and Target filed its reply on February 2, 2016.  (ECF No. 15.)  The Court heard oral argument on the motion on February 16, 2016 (ECF No. 24) and has thoroughly examined the entire record.

**II.**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A dispute is genuine if the evidence is such that a reasonable factfinder could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254 (1986).  Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the plaintiff.  *Id*. at 252.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id*.

When ruling on a motion for summary judgment, the Court may only rely on admissible evidence.  *See, e.g., Blackburn v. United Parcel Serv., Inc.*, 179 F.3d 81, 95 (3d Cir. 1999).  A Court must view the facts and draw all reasonable inferences in favor of the nonmoving party.  *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 357 (3d Cir. 2004).  However, "an inference

based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat entry of summary judgment." *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990).

### III.

Carter-Butler bases her negligence claim on a theory of premises-liability.  Under Pennsylvania law, "[t]he mere occurrence of an accident does not establish negligent conduct." *Daniels v. Sears & Sears Roebucks & Co.*, 15-4821, 2016 WL 521205, at *2 (E.D. Pa. Feb. 10, 2016) (quoting *Martin v. Evans*, 711 A.2d 458, 502 (Pa. 1998) (internal citation omitted)). Rather, in any negligence action a plaintiff must demonstrate: (1) the existence of a duty; (2) a breach of that duty; (3) a causal connection between the breach and the plaintiff's injury; and (4) actual loss or damage.  *Id*. (citing *Krentz v. Consol. Rail Corp.*, 910 A.2d 20, 27–28 (Pa. 2006)).

The duty of care "a possessor of land owes in a premises-liability action depends on whether the entrant is a trespasser, licensee, or invitee." *Graham v. Moran Foods, Inc.*, 11-239, 2012 WL 1808952, at *2 (E.D. Pa. May 18, 2012) (citing *Carrender v. Fitterer*, 469 A.2d 120, 123 (Pa. 1983)).  The parties agree that Carter-Butler was an invitee.  (*See generally* Def.'s Mot. Summ. J. ("Def.'s Mot."), Pl.'s Resp. to Def.'s Mot. Summ. J. ("Pl.'s Resp.").)  As an invitee, Carter-Butler was owed the "highest duty of care owed to any entrant." *Graham*, 2012 WL 1808952, at *2 (citing *Carrender*, 469 A.2d at 123).

"It is well settled that a business owner owes a duty to an invitee 'to maintain its premises in a reasonably safe condition for the contemplated uses thereof and the purposes for which the invitation was extended.'" *David by Berkeley v. Pueblo Supermarket of St. Thomas*, 740 F.2d 230, 236 (3d Cir. 1984) (quoting *Morris v. Gimbel Brothers, Inc.*, 394 F.2d 143, 145 (3d Cir. 1968)).  A business owner is "not an insurer of the visitor's safety." *Rabutino v. Freedom State*

*Realty Co.*, 809 A.2d 933, 939 (Pa. Super. Ct. 2002) (citation omitted). Rather, a business owner is subject to liability for harm caused to his invitees by a condition on the land if, but only if, he:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

Restatement (Second) of Torts § 343.

Carter-Butler's "ability to produce evidence of a dangerous or hazardous condition is the crux of a premises liability action involving a slip-and-fall." *Daniels*, 2016 WL 521205, at *3 (citing Restatement (Second) of Torts § 343). Only if she establishes a dangerous or hazardous condition can Carter-Butler attempt to prove that Target knew of such condition, or in the exercise of reasonable care should have known the condition existed. *See Zito v. Merit Outlet Stores*, 647 A.2d 573, 575 (Pa. Super. Ct. 1994).

Target contends that Carter-Butler has failed to put forth any evidence of a dangerous or hazardous condition. Specifically, Target argues that Carter-Butler has failed to adduce any evidence showing that the clothing rack: (1) was in disrepair; (2) was improperly assembled; or (3) was out of its proper place or observably dangerous. (Def.'s Mot. at 4.) Target also notes that Carter-Butler testified that the area was well-lit and free of any debris or clutter. (*Id.*) In contrast, Carter-Butler contends that a dangerous or hazardous condition existed because: (1) the rack was on wheels; and (2) the spacing between racks was insufficient.[4] (Oral Arg. 22:15–24.)

---

[4] Carter-Butler raised these arguments for the first time at oral argument. (Oral Arg. 15:14–16:25.) Prior to summary judgment, Carter-Butler's counsel had not seen the surveillance video which contradicted his client's account of the fall. (*Id.* 5:2.) After seeing the video, counsel stated that he was now pursuing the case on "[d]ifferent theories." (*Id.* 7:19.) Accordingly, Carter-Butler's brief did not help the Court understand exactly what she was claiming to be dangerous or defective. Her response brief instead sets forth ten pages worth of legal standards in premises-liability actions. (Pl.'s Resp. at 3–12.) In support of her argument, Carter-Butler expends five pages discussing how Target had either actual or constructive notice of a dangerous or hazardous condition, without ever identifying what the condition was. (*Id.* at 13–17.) The Court need not reach the notice inquiry, however, as Carter-Butler has failed to make the threshold showing of a dangerous or hazardous condition.

Carter-Butler fails to establish a dangerous or hazardous condition. Nothing in the record supports a finding that a clothing rack with wheels constitutes a condition "from which an inference of negligence would arise." *Myers v. Penn Traffic Co.*, 606 A.2d 926, 931 (Pa. Super. Ct. 1992) (quoting *Bowser v. J.C. Penney Company*, 46 A.2d 324, 326 (Pa. 1946) (citations omitted)). In *Myers*, the plaintiff allegedly slipped on an accumulation of wax on a grocery store floor. *Id*. Affirming summary judgment, the Pennsylvania Superior Court noted that the "real question [] is not whether there was an improper application [of wax] but whether such alleged improper application created a condition so obviously dangerous as to amount to evidence from which an inference of negligence would arise." *Id*. (quoting *Bowser*, 46 A.2d at 326 (citation omitted)).

Similarly, the question here is whether a clothing rack with wheels created a condition so obviously dangerous that a reasonable fact-finder could infer that Target was negligent. Carter-Butler's argument rests on an assumption that a reasonable juror could infer that the rack was hazardous simply because she fell. Such an "inference would be sheer speculation." *Daniels*, 2016 WL 521205, at *4 (referencing *Fedorczyk v. Caribbean Cruise Lines, Ltd.*, 82 F.3d 69, 75 (3d Cir. 1996) ("[W]hen the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.")). If anything, the record establishes that the racks are specifically made with wheels to prevent injuries when customers strike the racks with their carts. (Doyle Dep. 37:2–6; Oral Arg. 35:14–21.) Carter-Butler therefore fails to establish that that a clothing rack with wheels is a dangerous or hazardous condition. Likewise, there is no record evidence that the spacing between the clothing racks was so "obviously dangerous" to support an inference that Target was in any way negligent. Upon review of the surveillance video, Doyle testified that

6

there were no issues with the clothing rack setup, the spacing of the racks or the location of the racks at the time of the accident. (Doyle Dep. 49:13–18.) The Court, having reviewed the video, agrees.

Even if Carter-Butler could somehow show a dangerous condition—which she cannot—any such condition was certainly known and obvious. A possessor of land "is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A. "'Obvious' means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Id*. "Although the question of whether a danger was known or obvious is usually a question of fact for the jury, the question may be decided by the court where reasonable minds could not differ as to the conclusion." *Carrender*, 469 A.2d at 124.

The area around the clothing rack was free of debris and well-lit. (Carter-Butler Dep. 37:21–38:68.) Carter-Butler stood by the clothing rack and took clothes off of it for two minutes and twenty four seconds before she tripped. (Store Video.) Before and after the fall she navigated her cart through the area without ever striking anything. (*Id*.) Both Doyle and Hamblin testified that nothing was wrong with the rack. (Doyle Dep. 49:13–18; Hamblin Dep. 21:13–19.) Holding Target liable under these circumstances would charge them with a duty not recognized under Pennsylvania law—to protect customers from tripping over perfectly operational clothing racks that are in plain sight. Because "[t]he mere occurrence of an accident does not establish negligent conduct," Carter-Butler's claim is dismissed. *Daniels*, 2016 WL 521205, at *2 (quoting *Martin*, 711 A.2d at 502 (internal citation omitted)).

BY THE COURT

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J